## STATE v. TECOPE

No. 2973

November 1, 1932. 15 P. (2d) 677.

*Noland & Noland,* for Appellant:

*Gray Mashburn,* Attorney-General; *W. T. Mathews,* Deputy Attorney - General; *Harley Harmon,* District

Attorney; and *Roger Foley,* Deputy District Attorney, for the State:

## OPINION

By the Court, DUCKER, J.:

Appellant was convicted of murder of the first degree in the Eighth judicial district court in and for Clark County. The jury fixed his punishment at imprisonment for life. He was sentenced accordingly. From the judgment and from the order denying his motion for a new trial he has prosecuted this appeal.

The crime for which appellant was convicted was alleged to have been committed by shooting one Fred Haganuma on the 27th day of July, 1931. The shooting occurred at the place where the latter resided near the little town of Searchlight in the southern part of Clark County, in this state. The deceased was a Japanese. The accused is an Indian. Shortly after the shooting, Haganuma was taken to Searchlight and placed under the care of a physician. He died at that place on July 30, 1931. The attending physician testified that the cause of his death was septic pneumonia induced by a gunshot wound in the chest.

■■ Appellant contends that the evidence is insufficient to support the verdict and judgment. The circumstances surrounding the shooting as proved by the state are not abundant. Only one witness, a Japanese named K. Ishibe, was produced by the state to establish appellant's connection with the shooting. He testified through an interpreter in substance as follows: "I knew Fred Haganuma during his lifetime, in Clark County, Nevada, about the 27th of July, 1931. I knew Steve Tecope, the defendant on the 27th of July, 1931. I knew where Fred was about seven 7 o'clock on the evening of July 27th, 1931. He was at the house below Searchlight, Nevada. Mrs. Haganuma and Tommykawa were present at that time. I was there, too. At the time Fred Haganuma

and I were sitting down at the table eating supper. I saw Tecope, the defendant, at that time. When I first saw Steve Tecope he entered in the gate. The truck was there. There was just a three foot opening at that place. Steve came in with a gun. When I first saw Steve Tecope he was just bending down. He had a gun in his hand. When I saw the gun Haganuma was talking with me. One minute after I saw Steve Tecope with the gun the shot was fired. When the shot was fired Fred Haganuma was sitting down. After the shot was fired the defendant just went home. Haganuma had no gun or firearms in his hand at the time. Nothing was said by the defendant Tecope or Haganuma before the shot was fired. Just one shot was fired. The defendant had a gun in his hand when the shot was fired. After the shot was fired Fred Haganuma put his hand in his chest and rolled down on the ground."

On cross-examination the witness testified: "When I first saw Tecope he was coming through a little narrow gate about twenty feet from the table I mentioned. That gate was the entrance to the shade made of brush. That entrance was about ten feet wide. The truck was in the entrance which left about a three foot opening at that time. The truck was in the driveway. When I first saw Tecope he was bending over like this (indicating a crouching position). I don't know exactly how big that shade was we were sitting under. I think it was about twenty or thirty feet. The driveway where the truck was is about ten feet wide. Across the driveway to the west there is a shed about fifty feet wide. Just west of this is the kitchen house. Just at the west side of the kitchen are some more houses. The truck was in the driveway in the entrance to the shade. The front side of the truck was in a straight line with the table. I have told the court here all the conversation that took place that night. The other Japanese people there that night were Tommykawa, Mrs. Haganuma and I. I know this man Tommykawa. He was working for

Haganuma. He is in Texas now. I received a letter from him. Mrs. Haganuma is in Pasadena, California. I am sure she hasn't gone to Texas too. Tommykawa was giving the hay to the horse that night. I could not see Tommykawa from where I was sitting."

Ishibe was the only witness on the part of the state to testify as to what occurred at the time of the shooting. There was no other testimony tending to connect the appellant with the shooting. The appellant did not testify, and produced but one witness, a physician who testified that a wound such as the deceased received could cause death, but was not necessarily fatal. This witness testified also that in his opinion it was not possible without a slide examination, and merely from the pulse, respiration, and temperature, to tell whether or not a case of pneumonia is septic or otherwise, but that, if a doctor, a graduate of a medical school, testified that he had in his charge for over a period of three days an individual who had received such a wound and had died from septic pneumonia caused by the wound, that could be possible.

We think the testimony on the part of the state is sufficient to sustain the verdict. It is true, no previous relations between appellant and deceased were established, and nothing adduced to show motive on the part of the accused. But motive is not essential to a conviction. People v. Durrant, 116 Cal. 179, 48 P. 75.

The reason is well stated in People v. Tom Woo, 181 Cal. 315, 184 P. 389, 394. The court said: "Appellants contend that the evidence is insufficient, particularly because of the absence of proof of motive. It is true the prosecution did not offer such proof. But, as has been declared in many cases, it is not necessary to establish a motive for the perpetration of an offense. A presumption of innocence arises in favor of a person accused of crime. This presumption is disputable, and may be overcome by other evidence. The presence of a motive is evidence tending to prove guilt, for the reason that its tendency is to rebut the presumption of innocence.

But the presence or absence of motive is essentially a question of fact, and, like any other fact, is not necessary to be proved, if the crime can otherwise be established by sufficient competent evidence. So, in this case, the absence of proof of motive is a fact to be reckoned on the side of innocence; but, if the proof of guilt is nevertheless sufficient to overthrow the presumption of innocence, the appellants must stand convicted, notwithstanding no motive has been shown."

██ Appellant in the case before us stresses as a fatal weakness in the evidence the fact that Ishibe did not testify that he saw the appellant fire the shot; and that the district attorney did not ask him to do this. It is contended, therefore, that the evidence discloses nothing more than a mere opportunity on the part of appellant to commit the crime, which is not sufficient. We, of course, cannot tell why the witness did not so testify or why the district attorney did not question him in this respect. However, it may be that the witness did not actually see the shot fired and that the district attorney was aware of this fact. But, be that as it may, the evidence is no weaker than if the district attorney had asked the question and the witness had answered "No." Nevertheless, the evidence tends to prove something more than mere opportunity to do the shooting. It tends to prove that appellant actually fired the shot. According to the testimony of the witness, he saw the appellant approaching through the doorway in a crouching manner, armed with a gun, about twenty feet from the deceased. In a minute after the shot was fired. Appellant had a gun in his hand when the shot was fired. After the shot was fired, Haganuma put his hand to his chest and rolled down on the ground. The appellant then left the place. There appears nothing inherently improbable in the testimony. It is not self-contradictory in any respect, and it is not contradicted by other testimony or any physical fact. Whether this testimony is to be believed was for the jury to determine. If believed, it was clearly enough in connection

with the testimony of the attending physician to warrant the jury in finding that appellant killed Haganuma under circumstances amounting to murder of the first degree. This court will not disturb a verdict when there is substantial evidence to support it.

■ Misdirection of the jury is also assigned as error. In this respect it is contended that the court erred in giving instruction No. 14. The part objected to is wherein it is stated how an unintentional killing becomes murder of the first degree. It is insisted that, as there is no evidence of involuntary killing, the statement only tends to confuse the jury. We are unable to perceive how this statement could in anywise prejudice the appellant. The same may be observed as to instructions numbered 25 and 26, objected to for the same reason.

■ Under the same head appellant objects to four instructions given by the court. In one of these the part objected to is wherein it is stated "when an involuntary, that is to say, an unintentional killing happens in the commission of an unlawful act, which in its consequences naturally tends to destroy the life of a human being, the evil or unlawful purpose, motive or design, with which such unlawful act is done, constitutes malice aforethought, and makes even such unlawful killing murder." It is insisted that the instruction is inapplicable, in that there is no evidence that the appellant was doing an unlawful act, and prejudicial, in that the jury might have been led to believe that the court thought that appellant was committing an unlawful act. We perceive no such tendency in the instruction and think, even if appellant's contention that the instruction was inapplicable is correct, it is harmless.

■ The other instructions objected to, instructions numbered 21, 22, 23, and 24, pertain to the crime of manslaughter. It is contended that there is no evidence of manslaughter, and the instructions are therefore inapplicable, confusing, and prejudicial. We agree with appellant that there is no evidence in the case

tending to show manslaughter, but we see no basis for a conclusion of prejudice caused appellant by the giving of these instructions. His counsel seek to furnish this by suggesting that, because of these instructions, the jury might have derived the impression that the court considered appellant guilty of something, and, since there was no evidence of manslaughter, the only verdict they could return would be guilty as charged. The suggestion is without any force. Since no ground appears for concluding that appellant was prejudiced by these instructions, our consideration of this assignment is governed by section 11266 N. C. L., and will therefore be disregarded.

We find none of the cases cited by counsel to be in point. The following cases are adverse to appellant on this point: People v. Cipolla, 155 Cal. 224, 100 P. 252; Baker v. State, 154 Ga. 716, 115 S. E. 119; Janeway v. State, 23 Okl. Cr. 343, 214 P. 933.

■ Misconduct of the district attorney is also assigned as error. Under this assignment appellant alleges that the district attorney was guilty of misconduct in exhibiting before the jury, and attempting to introduce in evidence, a rifle and cartridges which he knew could not be identified and would not be competent evidence. We are not impressed with the contention. It is true these articles were not offered in evidence after having been marked for identification. There is nothing to indicate that the district attorney was acting in bad faith. The evidence disclosed that the wound which caused the death of Haganuma was made by a large bullet and that appellant was present at the shooting armed with a gun. The most we can infer from the circumstances is absence of bad faith and that the district attorney merely failed to connect the appellant with these exhibits sufficiently to justify their offer as evidence in the case. No prejudice could have occurred, especially in view of the court's instruction to the jury to disregard all evidence offered that had been excluded, all evidence stricken out, and all

questions to which objections had been sustained.

Appellant assigns as misconduct the following statement made to the jury by the district attorney in his argument to the jury: "Give him the gas or turn him loose that he may take his gun back to the Colorado River and do some more shooting." This statement is objected to as having reference to the rifle not admitted in evidence and calculated to inflame the minds of the jury. We do not think that either conclusion follows. As previously stated, the evidence discloses that appellant had a gun. Why may not the district attorney have been referring to the gun seen in his hands? The plea in this respect is not to be commended as legitimate argument, but it does not amount to misconduct.

 Upon the assignment of error being made, the court promptly stated to the jury: "The jury are to remember that the arguments are not evidence in this case and that they will please keep that in mind. The record will show an assignment of misconduct." This was all that was necessary in the way of censure from the court. Appellant assigns as gross misconduct the following statements of the district attorney in his opening argument: "The defense does not deny the fact of the shooting. They don't deny the fact that this defendant shot the deceased." These statements do not exceed the bounds of legitimate argument under the facts of the case. There is nothing in the evidence that tends to refute that Haganuma was shot or that tends to show either from the evidence of the prosecution or defense that anyone other than appellant fired the shot. The only evidence or testimony introduced by appellant was the testimony of a physician by which it was sought to show that the deceased died of pneumonia which was not the direct result of the wound. Certainly under such circumstances the district attorney could argue that the shooting of the deceased and the evidence tending to show that he was shot by appellant was undenied.

 There is nothing on the face of the remarks to

indicate that the district attorney was trying to prejudice the appellant by the fact that he had not testified in his own behalf. They cannot be said to constitute directly or indirectly a reference to appellant's failure to testify, and are not misconduct. State v. Williams, 28 Nev. 395, 82 P. 353; State v. Clarke, 48 Nev. 134, 228 P. 582.

The only other error assigned is the fact that the court erred in allowing the state to amend the information, but, as this has been waived, it requires no discussion.

The judgment and order appealed from are affirmed.