## STATE v. WAYNE N. DAHLSTROM.

150 N. W. (2d) 53.

April 7, 1967—No. 39,591.

*George Byers,* for appellant.

*Robert W. Mattson,* Attorney General, *Gerard Snell,* Solicitor General, *William B. Randall,* County Attorney, and *Bertrand Poritsky,* Assistant County Attorney, for respondent.

SHERAN, JUSTICE.

Appeal from a judgment of the district court.

At about 1 a. m. on November 30, 1963, at the intersection of Western and Thomas Avenues in St. Paul, defendant, armed with a .22 rifle, confronted Sergeant Robert M. Lee of the St. Paul Police Department. Ordered to drop his gun, defendant raised the weapon to a shooting position. Lee and other officers fired their .38 service revolvers at defendant. He was wounded, apprehended, and in due course charged by information with the crime of attempted murder in the second degree. Convicted of this crime, he now appeals.

Error is claimed because:

(1) The trial court failed to make available to defendant's attorney a police report which might have a bearing on the question of whether the investigating officers actually observed defendant fire the .22 rifle.

(2) The trial court instructed as to lesser offenses which were not included in the crime charged.

(3) The trial court (a) failed to instruct the jury with respect to the provisions of Minn. St. 611.02, providing that when an offense

has been proved and there exists a reasonable doubt as to which of two or more degrees the defendant is guilty, he should be convicted of only the lowest; and (b) in instructing the jury as to the possibility of returning a verdict finding defendant guilty of lesser but included offenses, made improper recommendations as to the order in which the crime charged and lesser included offenses should be considered.

## DISCLOSURE

■ Defendant's .22 rifle was jammed when he discarded it. But police officers testified that they saw and heard defendant shoot it at Officer Lee. Although the case was tried before our present rule requiring the production of prior statements of witnesses for the purpose of cross-examination was announced, the court was adequately advised by defendant's counsel that he claimed the right to use such reports for purposes of impeachment, specifically with respect to police officers who testified that the .22 rifle in Dahlstrom's possession was fired at Officer Lee. The request was denied. The problem is: Was the ruling erroneous and, if so, what should be done about it?

The beginning point for a consideration of this issue is State v. Thompson, 273 Minn. 1, 2, 139 N. W. (2d) 490, 494. In that case it was held:

"After a witness is called and testifies for the prosecution an accused person has the right to examine unprivileged pretrial statements of the witness for the purpose of determining whether he wishes to use such statements for impeachment purposes, without laying any further foundation than showing that such statements were made. If the prosecution objects to the relevancy of the statements, the court shall examine them in camera and excise those portions not relevant to the testimony of the witness. All portions of the statements so excised shall be made a part of the record so that the court's action in denying the accused access to them may be reviewed on appeal."

The decision in the Thompson case was filed January 7, 1966. In State v. Grunau, 273 Minn. 315, 141 N. W. (2d) 815, filed March 18, 1966, it was held that this so-called "Jencks rule" should be applied to cases coming to this court on appeal where the judgment has not

become final and the record has been protected, if failure to do so will result in substantial prejudice to the defendant. The principle enunciated in the Thompson case was further refined and it was held in Grunau that in determining what statements came within the rule, the following guidelines are to be used (273 Minn. 316, 141 N. W. [2d] 818):

"a. Written statements made by a witness and signed *or otherwise approved or adopted* by him are producible.

"b. *Reports made by an officer, who is called as a witness by the prosecution, to another officer or the department for which he works are producible.*

"c. A recording, whether prepared by stenographic, mechanical, electrical, or other method, or a transcription thereof, shown to be a substantially verbatim recital of an oral statement made by the witness to an investigator and recorded contemporaneously therewith or shortly thereafter is producible.

"d. Notes or memoranda of the witness not shown to be a substantially verbatim recording of an oral statement of the witness or not approved or adopted by him, and notes or memoranda which contain impressions and observations of the officer, are ordinarily not producible." (Italics supplied.)

Although the instant case was tried before State v. Thompson, *supra,* was filed, the judgment has not become final. We feel that defendant's attorney adequately protected his record at trial in the situation then existing although the demand to produce, once denied, was not repeated, as perhaps it should have been, after the direct examination of each officer was completed. Because the use of an inoperative weapon could be inconsistent with the intent to kill which constitutes an essential element of the crime of murder in the second degree, an affirmative statement appearing in the report or reports of the police officers made immediately following the observed events relating to whether the .22 rifle in defendant's possession was in fact fired at Officer Lee would be very significant, and the refusal to permit examination of such statements by defendant's attorney upon request might well have caused substantial prejudice. We do not think such

substantial prejudice would necessarily have occurred in the context of the present case if the report or reports actually contain nothing one way or the other on this point of fact.

The difficulty with the case as it now stands is that the police report or reports were never presented to the district judge and are not available to us for examination. The "in camera" hearing prescribed in State v. Grunau, *supra,* as a technique for determining the producibility of a possibly impeaching statement has never been held.

The best solution for the problem thus presented, we believe, is to remand this case to the district court for further proceedings at which these steps can be taken:

(1) Defendant's attorney may have 30 days from the filing of this decision within which to serve written notice of motion for an order that the relevant police report or reports be presented to the district court for examination.

(2) At the time and place fixed for the hearing on this motion, the police report or reports should be appropriately identified and presented to the district judge for examination.

(3) The jurist presiding will examine the reports in light of the record and the testimony taken at the time of the trial and determine after hearing the views of counsel whether the report or reports contain information which would have been significant from defendant's standpoint.

If the trial judge concludes that defendant was substantially prejudiced by the fact that the reports were not made available at the time this case was tried, a new trial should be ordered; but not otherwise. The procedure outlined is not inconsistent with the following decisions emanating from the Federal courts in dealing with the Jencks Act: Campbell v. United States, 365 U. S. 85, 81 S. Ct. 421, 5 L. ed. (2d) 428; Killian v. United States, 368 U. S. 231, 82 S. Ct. 302, 7 L. ed. (2d) 256; Williams v. United States, 117 App. D. C. 206, 328 F. (2d) 178; United States v. Keig (7 Cir.) 320 F. (2d) 634; United States v. Chapman (2 Cir.) 318 F. (2d) 912; Ogden v. United States (9 Cir.) 303 F. (2d) 724; Id. (9 Cir.) 323 F. (2d)

818, certiorari denied, 376 U. S. 973, 84 S. Ct. 1137, 12 L. ed. (2d) 86; Williams v. United States, 119 App. D. C. 177, 338 F. (2d) 286, 5 A. L. R. (3d) 746.

### LESSER OFFENSES

■ Defendant claims that the court erred in submitting verdicts for attempted murder in the third degree, attempted manslaughter in the first degree, and attempted manslaughter in the second degree, on the grounds that there are no such crimes—intent being an essential element of an attempt to kill. One cannot attempt to kill without intending to kill. Defendant duly objected to the submission of attempted murder in the third degree and attempted manslaughter in the first degree. Defendant asserts that the instructions submitting these matters were confusing to the jury and put defendant in an unfavorable light.

The state contends it is better to err on the side of too many lesser includeds than too few, so that error cannot be predicated upon their nonsubmission. This contention has no application here where defendant objected to the submission of the "lesser offenses." Having so done, he would not have been able to object later to their nonsubmission. See, State v. Jordan, 272 Minn. 84, 136 N. W. (2d) 601.

Minn. St. 609.17 provides in part:

"Subdivision 1. Whoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime, and may be punished as provided in subdivision 4.

"Subd. 2. An act may be an attempt notwithstanding the circumstances under which it was performed or the means employed to commit the crime intended or the act itself were such that the commission of the crime was not possible, unless such impossibility would have been clearly evident to a person of normal understanding."

Murder in the second degree is defined by § 609.19 in these terms:

"Whoever causes the death of a human being with intent to effect the death of such person or another, but without premeditation, is guilty of murder in the second degree and may be sentenced to imprisonment for not more than 40 years."

The elements of the attempted offense, as defined in §§ 609.17 and 609.19, in combination, therefore, would be:

(1) An intent on the part of defendant to cause the death of a human being, but without premeditation.

(2) An act constituting a substantial step toward, and more than preparation for, the killing.

We do not conceive of any practical basis upon which the jury could have found defendant guilty of attempted murder in the third degree.[1] Philosophically, it might be possible to attempt to perpetrate an act eminently dangerous to others and evincing a depraved mind regardless of human life within the meaning of the phrase as used in § 609.195, defining murder in the third degree. But we do not think that the legislature contemplated that such conduct would constitute attempted murder in the third degree if there was no attempt to effect the death of any person and if no one was in fact harmed physically. It is theoretically possible, perhaps, for one to attempt the attempt to commit a felony upon or affecting another to which § 609.195(2) refers. But we cannot conceive of a factual situation which could make such conduct attempted murder in the third degree where the actor did not intend the death of anyone and where no death occurred.

There was no evidence in this record to support submission of manslaughter in the first degree as prescribed by § 609.20(1)[2] because

---

[1] Minn. St. 609.195 provides: "Whoever, without intent to effect the death of any person, causes the death of another by either of the following means, is guilty of murder in the third degree and may be sentenced to imprisonment for not more than 25 years:

"(1) Perpetrates an act eminently dangerous to others and evincing a depraved mind, regardless of human life; or

"(2) Commits or attempts to commit a felony upon or affecting the person whose death was caused or another, except rape or sodomy with force or violence within the meaning of section 609.185."

[2] Minn. St. 609.20(1) provides: "Whoever does any of the following is guilty of manslaughter in the first degree and may be sentenced to imprisonment for not more than 15 years or to payment of a fine of not more than $15,000, or both:

"(1) Intentionally causes the death of another person in the heat of

there was no evidence from which a jury could have found that defendant's conduct was "provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances."

If one causes the death of another in committing or attempting to commit a crime with such force and violence that death of or great bodily harm to any person was reasonably foreseeable (murder in the first degree and second degree not resulting), he is guilty of manslaughter in the first degree within the meaning of § 609.20(2).[3] Where no death has occurred there can be no attempt to commit manslaughter as defined in this subdivision.

Manslaughter in the second degree as defined by § 609.205(1)[4] (the only clause of that section which could have any application here) punishes culpably negligent conduct which results in death. An attempt to commit culpably negligent conduct which does not result in death or physical harm may be criminal. But in our mind it is not attempted manslaughter in the second degree.

There are no Minnesota cases dealing specifically with the problems which have been discussed relating to attempts.[5] It is well established,

---

passion provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances."

[3] Minn. St. 609.20(2) provides: "Whoever does any of the following is guilty of manslaughter in the first degree * * *:

\* \* \* \* \*

"(2) Causes the death of another in committing or attempting to commit a crime with such force and violence that death of or great bodily harm to any person was reasonably foreseeable, and murder in the first or second degree was not committed thereby."

[4] Minn. St. 609.205(1) provides: "Whoever causes the death of another by any of the following means is guilty of manslaughter in the second degree and may be sentenced to imprisonment for not more than seven years or to payment of a fine of not more than $7,000, or both:

"(1) By his culpable negligence whereby he creates an unreasonable risk, and consciously takes chances of causing death or great bodily harm to another."

[5] Minnesota cases dealing with attempts include: State v. Dumas, 118 Minn. 77, 136 N. W. 311, 41 L. R. A. (N. S.) 439; State v. Lampe, 131

however, that a criminal statute must be definite enough to give notice of the conduct required to anyone who desires to avoid its penalties and to guide the judge in its application and the attorney in defending a person charged with its violation. A criminal statute cannot be so vague that people of common intelligence have to guess at what it means. Courts are inclined to give reasonable and sensible construction to criminal statutes in order to determine whether the language contains sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practice. State v. Suess, 236 Minn. 174, 52 N. W. (2d) 409; State v. Moseng, 254 Minn. 263, 95 N. W. (2d) 6; State v. Walsh, 43 Minn. 444, 45 N. W. 721.

In giving a restrictive definition to our statute defining attempts as applied to attempted homicide, we find support in the discussions appearing in the following authorities: People v. Brown, 21 App. Div. (2d) 738, 249 N. Y. S. (2d) 922; Wechsler, Jones, and Korn, *The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy,* 61 Col. L. Rev. 571, 576;[6] 1 Warren, Homicide (Perm. ed.) § 81, p. 406;[7] 1 Burdick, Law of Crime, § 135;[8] 1 Wharton, Criminal Law and Pro-

---

Minn. 65, 154 N. W. 737; State v. McLeavey, 157 Minn. 408, 196 N. W. 645; State v. Lowrie, 237 Minn. 240, 54 N. W. (2d) 265.

[6] "Since a particular crime must actually be intended, the charge must be precise and must not permit the jury to convict the actor on one of several mental states. Thus when the charge is attempted murder or assault with intent to kill, it is error to permit conviction on a finding of reckless disregard for human life or intent to inflict grievous bodily harm. And since a conviction for murder can be premised on either of these mental states — as well as intent to kill — it is improper to say that one can be convicted of attempted murder if he could have been convicted of murder had the victim died. There must be a specific intent to kill."

[7] "* * * [T]o constitute an attempt to commit murder one must specifically contemplate taking someone's life. * * * [W]here a person without intent to kill plans to do an act which, if done, would constitute murder — he cannot be convicted of an attempt to commit murder, if, in fact and truth, he did not intend to kill."

[8] "* * * Where the consummated crime is itself an attempt there can

cedure, § 73;[9] Donnelly, Goldstein, and Schwartz, Criminal Law, pp. 630 to 644; Smith, *Two Problems in Criminal Attempts*, 70 Harv. L. Rev. 422, 434.[10] See, also, Annotation, 79 A. L. R. (2d) 597; 21 Am. Jur. (2d) Criminal Law, § 110.

The instructions given by the trial judge were such as to permit the jury to find attempted murder in the third degree, attempted manslaughter in the first degree, attempted manslaughter in the second degree, aggravated assault, and assault as lesser and included offenses under the information charging attempted murder in the second degree. However, under the circumstances of this case there was no reversible prejudice where the evidence was persuasive that if the defendant was guilty at all, he was guilty as charged and the verdict returned by the jury was guilty of the crime charged in the information. See, People v. Russell, 322 Ill. 295, 153 N. E. 389; Gannon v. People, 127 Ill. 507, 21 N. E. 525; State v. Vanella, 40 Mont. 326, 106 P. 364; State v. Tecope, 54 Nev. 308, 15 P. (2d) 677.

## INSTRUCTIONS

3a.   In the event of a new trial, the jury should be instructed specifically with respect to the provisions of § 611.02, providing that when an offense has been proved and there exists a reasonable doubt

---

be no indictable offense in attempting to commit it, because that would be an attempt of an attempt, a refinement which the law does not recognize."

[9] "There must be an intent to commit a specific crime to constitute an attempt, even though the commission of the crime itself might not require such a specific intent. Thus, although murder may be committed without a specific intent to kill, as under the felony murder rule, there can be no attempt to commit murder without a specific intent to kill."

[10] "* * * Recklessness and negligence are incompatible with desire or intention. Where, therefore, in a crime which by definition may be committed recklessly or negligently but not intentionally, the recklessness or negligence relates not to a pure circumstance but to a consequence, it is impossible to conceive of an attempt. Thus there can be no attempt to commit involuntary manslaughter. The consequence involved in that crime is the death of the victim and an act done with intent to achieve this, if an attempt at all, is attempted murder. It is of the essence of involuntary manslaughter that the consequence be produced either recklessly or negligently, but not intentionally."

as to which of two or more degrees the defendant is guilty, he should be convicted only of the lowest. We do not find this exact language in the charge as given, but the variance would not be sufficient in and of itself to require a new trial considering the charge as a whole,[11] there having been no exception to the charge on this ground at the time of trial.[12]

3b.   The trial judge instructed the jury:

"* * * I am going to suggest a procedure for you to follow which you may or may not choose to follow. * * * [T]hat decision will be yours. But the suggested procedure is, * * *."

The procedure suggested was to decide whether defendant was guilty of attempted murder in the second degree; if not, whether he was guilty of attempted murder in the third degree; if not, whether he was guilty of attempted manslaughter in the first degree; if not, whether he was guilty of attempted manslaughter in the second degree; if not, whether he was guilty of aggravated assault; and, if not, whether he was guilty of assault. While it is important that the trial judge should not in any way impose his views as to the order of procedure to be followed by the jurors in their decision of the case, we do not think that prejudicial error was committed in that regard in the context of the present problem.[13]

The case is remanded to the district court for further proceedings consistent with paragraph 1 of this opinion. In determining whether a new trial should be granted because of information appearing in the police reports when produced, it will be proper for the trial court to

---

[11] The trial court instructed: "If after you have considered the evidence in this case, you consider in your mind that you have reasonable doubt as to whether or not the defendant is guilty of any one of the crimes described to you, then it is your duty to acquit him, that is, to find him not guilty."

[12] Where appropriate exception is taken, the omission could constitute reversible error. See, State v. Asbury, 172 Iowa 606, 154 N. W. 915; Bryant v. State, 54 Tex. Cr. 65, 111 S. W. 1009; Abbott v. People, 86 N. Y. 460; Annotation, 20 A. L. R. 1258.

[13] See, Dillon v. State, 137 Wis. 655, 119 N. W. 352; 53 Am. Jur., Trial, § 802; 23A C. J. S., Criminal Law, § 1288, p. 698.

consider the cumulative effect of the failure to produce the reports at the time of trial; the submission of nonincluded offenses; and the absence of an instruction with respect to the provisions of § 611.02.

Remanded for further proceedings.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.