## STATE v. REGNAR ERNEST ELIASON.

155 N. W. (2d) 465.

January 5, 1968—No. 39,769.

*C. Paul Jones,* State Public Defender, and *Robert E. Oliphant,* for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Acting Solicitor General, *William B. Randall,* County Attorney, and *Mentor C. Addicks* and *Thomas M. Quayle,* Assistant County Attorneys, for respondent.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal by defendant, Regnar Ernest Eliason, from a judgment of the Ramsey County District Court whereby he was convicted of theft.

At about 7:30 on the evening of April 11, 1964, William Gilbertson, Joseph Jannette, and defendant met in front of the Radar Chef Cafe on Payne and Magnolia in St. Paul. Gilbertson and defendant

stated that they were "going on a job," and Jannette in turn suggested that they use his car. However, it was agreed that a faster car was necessary. The trio then got into the car of defendant's brother, and after a stop to make a telephone call and another stop at Gilbertson's home to get some money, they proceeded to 715 East Nevada, St. Paul, where, according to Gilbertson, there was a car which they could steal. Defendant Eliason let Jannette and Gilbertson off at that address and then returned to his home. Jannette and Gilbertson proceeded to open the garage and push a 1959 Buick across a street and into an alley. There they tried to "hot-wire" the car for about an hour and fifteen minutes, without success. Defendant then joined them in the alley, and 45 minutes later they got the car started.

After starting the Buick, the three men drove to the Roseville, Minnesota, bank where it appears they intended to hold up customers using the night depository. Defendant had a loaded 12-gauge sawed-off shotgun. When they arrived at the Roseville bank, they "spotted" a police car and switched their plan to the Hillcrest Bank in St. Paul. The trio arrived at the Hillcrest Shopping Center, where the bank was located, at approximately 11 p. m., and parked in the back row of a parking lot near the bank. While they were parked in the lot, both Gilbertson and Jannette made separate trips into a nearby bowling alley.

At approximately 11:35 p. m., two police officers received orders from the lieutenant in charge of the detective division of the St. Paul Police Department to go to the Hillcrest bowling alley and investigate a report of three men in a stolen 1959 Buick.[1] They were told that one man had a sawed-off shotgun.

The two police officers arrived at the Hillcrest shopping area at about 11:58 p. m. and observed the Buick parked in the lot with the engine running and three men seated in the car. The trio saw the squad car and what they believed to be two unmarked detective cars. They

---

[1] Of significance is the fact that the owner of the Buick was not aware that his car had been stolen until about 2 o'clock the following morning, April 12.

left the area with Gilbertson driving at a high rate of speed and were pursued by the officers. The car continued at high speed for about 7 or 8 blocks and then spun out of control and stopped. The officers pulled up beside the stopped car. Gilbertson and the defendant fled, and it appears that defendant was carrying the shotgun. One of the officers followed them and eventually apprehended defendant. Jannette did not attempt to run from the car but instead remained and was arrested. He warned the officers that defendant was carrying a shotgun and said that the car was stolen. Later that morning the loaded sawed-off shotgun was found near the area where defendant was arrested.

The grand jury returned an indictment on April 27, 1964, charging defendant with burglary and theft. He was tried before a jury, convicted of theft, and sentenced to 5 years in the State Reformatory.

The issues raised by defendant on appeal are (1) whether the trial court's failure to order certain pretrial reports and statements turned over to defendant for impeachment purposes is reversible error; (2) whether the trial court could find as a matter of law that an accomplice's testimony was adequately corroborated where, according to defendant, there was no direct evidence linking him to the crime; (3) whether failure of the trial court to instruct the jury on entrapment deprived the defendant of due process of law, assuming that the defense was available; and (4) whether it was error to admit into evidence a gun and ammunition when defendant was charged only with theft of an automobile.

■ Officer Anderson testified at the trial that he had taken notes during an interview with defendant and had prepared a report for police headquarters from these notes. During cross-examination he said that he had read the report to refresh his memory. It appears that the county attorney also had the report in his possession. Defendant through his attorney asked the court to order the report produced, but his request was denied. Defendant claims that this denial constitutes reversible error.

The law relating to the production of pretrial statements and reports is well set out in State v. Thompson, 273 Minn. 1, 139 N. W. (2d) 490, and followed in State v. Dahlstrom, 276 Minn. 301, 150 N. W.

(2d) 53, where this court reiterated the principles enunciated in Thompson as follows (276 Minn. 304, 150 N. W. [2d] 56):

"b. *Reports made by an officer, who is called as a witness by the prosecution, to another officer or the department for which he works are producible.*"

The instant case is similar to Dahlstrom in that it was tried prior to the determination of the rules relating to the production of statements and reports, but here the judgment had not become final. It is our opinion that the rules outlined in Thompson and Dahlstrom are applicable.

It is conceded by the state that Officer Anderson prepared a police report of the matter concerning the commission of the crime involved, and that he used this police report to refresh his recollection as to the events surrounding the entire case. He testified in essence that he was in the detectives' squad car with Detective Gray; that they were the two police officers who pursued the stolen automobile; that upon arrival at the scene of the arrest he remained at the stolen automobile with Jannette, holding him under arrest and guarding the car while Detective Gray pursued the defendant; that he sent the officer who came on the scene to the assistance of Detective Gray; and that his first observance of defendant was upon Gray's return, when defendant was in custody.

We find no inconsistency in Officer Anderson's testimony which could have been impeached by anything in his police report. It is our opinion that no substantial prejudice resulted to the defendant because of the trial court's refusal to order production of the report. Rather, it appears from the record that it was a matter within the discretion of the trial court.

■ Defendant contends that the trial court erred in finding as a matter of law that accomplice Jannette's testimony was adequately corroborated. It is his position that he was convicted solely on the evidence of Jannette, and that, therefore, the requirements of Minn. St. 634.04 were not satisfied.[2] Defendant argues that there was no evidence sus-

---

[2] Minn. St. 634.04 provides: "A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as

taining Jannette's claim that defendant intended to participate in the theft of the auto. He points out that the owner did not see him take the car; that Gilbertson, the driver of the car, did not testify; and that he had no control over the driver's behavior at the wheel.

In State v. Connelly, 249 Minn. 429, 82 N. W. (2d) 489, we stated that the requirements of § 634.04 with respect to corroboration of testimony of an accomplice is satisfied if the corroborating evidence tends in some substantial degree to affirm the truth of the accomplice's testimony and to point to the defendant's guilt. Such evidence need not be of sufficient weight that standing alone it would either make out a prima facie case or sustain a conviction. Additional weight may be derived in a sufficient degree from the testimony of the defendant or from substantial evidence which, in the light of defendant's entire conduct, clearly supports an inference of his connection with the crime.

It is our opinion that the testimony of accomplice Jannette was adequately corroborated. For example, there was evidence other than Jannette's that the 1959 Buick had in fact been stolen; that when it was eventually stopped three men were in the car; that two of them fled; that one of the men who fled was pursued by a police officer, was captured, and identified as the defendant; that one of the men in the Buick had a loaded sawed-off shotgun; that such a loaded shotgun was found in the area where defendant was arrested; that a gun case was found on the rear seat floorboard of the stolen Buick, and that eyeglasses with the name "Eliason" were found in that car. Also, a witness who knew the defendant testified that she saw him drive away from the Radar Chef Cafe in his brother's car at approximately the same time Gilbertson, Jannette, and the defendant met. We agree with the trial judge that there was ample evidence here to corroborate the testimony of the accomplice Jannette.

█ Defendant contends that the failure of the trial court to give an entrapment instruction denied him a fair trial. He made no request for such an instruction, and that issue is not properly here. Ordinarily,

---

tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

entrapment requires the instigation of the criminal act by the police. There is no evidence here that the criminal act was instigated by the police. Although there was evidence of an informer, that in no way established entrapment under the record here.

■ With respect to defendant's claim that the admission of the gun and ammunition into evidence over his objection prejudiced his rights, it is our opinion that such admission was proper and within the discretion of the trial court. There was evidence that the police received a report that one of the men in the Buick car had a loaded sawed-off shotgun. Inasmuch as defendant was not arrested in the immediate proximity of the stolen car, it was proper to offer evidence connecting him with the criminal act. The sawed-off shotgun was found in the area where defendant was arrested. It is our opinion that under the circumstances here the admission into evidence of the gun and its ammunition was proper circumstantial evidence connecting defendant with the stolen car. It was also evidence corroborating the testimony of the accomplice Jannette.

Affirmed.