[Cite as *State v. Nolan*, 2013-Ohio-2829.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-P-0047** |
| BOBBY D. NOLAN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2011 CR 0727.

Judgment: Affirmed in part; reversed in part and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, *Pamela J. Holder*, Assistant Prosecutor, and *Kristina Drnjevich*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Patricia J. Smith*, 9442 State Route 43, Streetsboro, OH 44241 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from the final judgment in a criminal proceeding before the Potage County Court of Common Pleas. After a jury trial, appellant, Bobby D. Nolan, was found guilty of attempted felony murder, felonious assault, and possessing a firearm while under a disability. He maintains that his conviction must be reversed because he was denied proper discovery and the jury verdict was against the weight of the evidence.

{¶2} The subject matter of this case concerns an altercation between appellant and the victim, Travis McPeak. The altercation happened in the yard of an apartment complex in Kent, Ohio, during the early morning hours of November 15, 2011. Prior to the incident, appellant and McPeak had met on only one occasion, approximately two years earlier when both men were incarcerated at the Portage County Jail.

{¶3} Tiffany Burns was a resident of the apartment complex where the incident occurred. Prior to November 15, 2011, Tiffany had shared her apartment with Nicole David, who was appellant's girlfriend. Recently, Nicole had moved from the apartment and started to live with appellant. At that time, appellant was living with another friend, Joshua Tipton, in Stow, Ohio.

{¶4} A few hours before the altercation, McPeak met Tiffany at a restaurant in Ravenna, Ohio. McPeak drove his own truck to the restaurant; however, at some point in the evening, he decided to "loan" his vehicle to Herschel Hill in exchange for illegal drugs.

{¶5} After their initial rendezvous at the restaurant, McPeak and Tiffany went to the home of a female friend in Ravenna, where they used illegal drugs. Eventually, they decided to go to Tiffany's apartment in Kent. The female friend agreed to drive McPeak and Tiffany to Kent, and they arrived at the apartment at approximately 12:00 a.m.

{¶6} Over the next two hours, McPeak and Tiffany watched a movie together. During this period, they had been alone in her apartment. At some point after the end of the movie, though, appellant came to the apartment. He was accompanied by Joshua Tipton and two other men. Prior to going to Tiffany's apartment, the four men had been at a local bar, where appellant had also engaged in illegal drug use.

2

{¶7} Almost instantly after entering the apartment, appellant began to verbally harass McPeak, claiming that McPeak was a racist. At one point during the "harassing" stage of the altercation, appellant ordered McPeak to totally disrobe so that his clothes could be checked. Upon putting his garments back on, McPeak decided to leave and went out the sole outside door to Tiffany's apartment. He then proceeded to go toward the sidewalk that was located near the adjacent roadway. At that juncture, Tipton was seated in the vehicle he had used to drive appellant to the apartment. Tipton's vehicle was not parked directly in front of Tiffany's door, but instead was located a few yards down the roadway.

{¶8} As McPeak got to the sidewalk and began to turn right, he saw a shadow coming toward him from behind. As McPeak turned to look, appellant attempted to hit him. However, McPeak was able to duck and avoid the intended blow. He then pushed appellant to the ground.

{¶9} As appellant was standing up, he removed a firearm from the front pocket of his sweatshirt and immediately fired it in the general direction of McPeak. The bullet entered the outside edge of McPeak's left thigh, went across the entire width of the left thigh, and exited the inside edge of the thigh. The bullet did not hit the femur bone in the left thigh; nor did it hit the main artery for McPeak's left leg.

{¶10} According to McPeak, he never saw appellant point the firearm at him, but only saw a flash of light. According to Joshua Tipton, who saw the altercation through the rearview mirror of his vehicle, appellant pointed the firearm downward, rather than at McPeak's torso or head. Pursuant to appellant's version of the events, he pointed the firearm downward because he was only attempting to intimidate McPeak.

3

{¶11} Upon being shot, McPeak ran away from the apartment complex. While appellant yelled at McPeak as he was running, appellant did not fire the gun again and did not chase after him. Over the next thirty minutes, McPeak hid in two different locations and tried to contact Tiffany and his brother on his cell phone. When he was convinced that he was not being followed, McPeak walked into a local convenient store and asked to use the store phone. While he again tried to contact his brother, the store clerk called the police on her cell phone. After the police arrived and noticed McPeak's injury, he was transported to a local hospital.

{¶12} When the Kent police tried to question McPeak about the shooting, he was initially evasive. In fact, at one point, he told an officer that he thought his truck had been stolen that night. However, after he was treated at the hospital, he explained the entire incident to the police and executed a written statement. In addition, McPeak was able to pick appellant out in a photo array.

{¶13} The Kent police were never able to recover the firearm that appellant used in the shooting. In testifying for the state at trial, Joshua Tipton indicated that appellant threw the firearm into a local lake.

{¶14} Within one week of the incident, the Portage County Grand jury returned a three-count indictment, charging appellant with two counts of attempted murder and one count of felonious assault. Each of the three counts had a firearm specification. While these charges were pending, the grand jury returned a supplemental indictment, under which appellant was charged with having a firearm while under a disability.

{¶15} Pursuant to the first count of attempted murder, appellant was charged under R.C. 2923.02 and 2903.02(A), and essentially asserted that appellant purposely

4

attempted to cause McPeak's death. The second attempted murder count was brought under R.C. 2923.02 and 2903.02(B), and asserted that appellant knowingly engaged in behavior that, if successful, would have caused McPeak's death as a proximate cause of his commission of the underlying offense of felonious assault.

{¶16} After appellant entered a plea of not guilty to all four charges, the parties went forward with discovery. In response to appellant's request for all medical records stemming from McPeak's hospital visit, the state only provided a three-page report.

{¶17} A three-day jury was held in February 2012. As part of its case-in-chief, the state called Dr. Amy Swegan, a surgeon who treated McPeak at the hospital on the morning of the incident. In anticipation of the doctor's testimony, on the first day of the trial, the state and the defense received from the hospital a packet of records regarding McPeak which was substantially larger than the three-page report. These new records contained some discussion concerning where the bullet had entered McPeak's thigh and where it had exited.

{¶18} At the outset of the second day of the trial, appellant's trial counsel moved the trial court to exclude the packet of hospital records from evidence on the basis that the defense had been denied timely discovery. The trial court granted this motion in part, specifically holding that the state would not be allowed to introduce the packet of hospital records into evidence. However, the court also held that Dr. Swegan would be permitted to review the packet for purposes of her testimony.

{¶19} In addition to Dr. Swegan, the state relied primarily upon the testimony of McPeak and Joshua Tipton. In response, appellant testified on his own behalf. As part of his testimony, appellant stated that he did not point the gun directly at McPeak, and

5

that he was only trying to scare McPeak by firing the gun at the ground.

{¶20} At the conclusion of the trial, the jury found appellant not guilty on the first count of attempted murder. However, the jury returned a guilty verdict on the remaining three counts. At the subsequent sentencing hearing, the trial court held that the second attempted murder count and the felonious assault count would be merged because they were allied offenses of similar import. Based upon this, the state elected to sentence appellant solely on the second attempted murder count.

{¶21} In relation to the attempted murder count and the accompanying firearm specification, the trial court imposed consecutive terms of seven years and three years. As to the separate count of having a weapon while under a disability, the court ordered a three-year term, to run concurrently with the ten-year term.

{¶22} In appealing his conviction, appellant has asserted three assignments of error for review:

{¶23} "[1.] The trial court erred when it failed to preclude the state from using medical records and testimonial evidence that were provided to defense counsel on the day of trial in violation of Criminal Rule 16. In the alternative the trial court erred when it failed to grant a continuance of the trial for the appellant to review the surprise evidence. The appellant was denied the right to a fair and impartial trial and due process of law.

{¶24} "[2.] Trial counsel was ineffective for failing to move for a continuance when presented with Criminal Rule 16 materials on the day of trial that were detrimental to and material to the appellant's defense.

{¶25} "[3.] The jury verdict was against the manifest weight of the evidence

6

where the evidence did not support a finding that the appellant acted with purposeful intent to commit murder when the evidence was apparent by all witness accounts that the appellant fired the weapon downward negligently and recklessly."

{¶26} Under his first assignment, appellant challenges the trial court's ruling on his motion to exclude the packet of medical records which were not provided to his trial counsel until the first day of the trial. While acknowledging that the state was denied the ability to introduce the packet into evidence, appellant still contends that the trial court erred in allowing Dr. Swegan to review the entire packet before she testified. According to appellant, by permitting the doctor to base her testimony on those records, the court indirectly allowed the jury to hear the substance of the "new" records.

{¶27} The focus of defense counsel's objection to the packet of records was the presence of materials that discussed the nature of the wounds on McPeak's left thigh. Specifically, the packet contained two documents indicating that hospital employees had made a determination concerning where the bullet had entered McPeak's thigh and exited the thigh. That is, the documents stated that the bullet entered through the outer edge of the thigh and exited via the inside edge.

{¶28} The foregoing analysis of the wounds appears to have directly conflicted with defense counsel's theory of the case. Appellant asserted that his counsel intended to show that the bullet had actually entered through the interior of the thigh. In light of this, his counsel would then argued that the evidence supported the factual finding that appellant did not act purposefully in firing the gun toward McPeak, but only recklessly or negligently.

{¶29} When the failure to disclose relevant information is discovered during the

7

course of a criminal trial, it is governed by Crim.R. 16. *State v. Summers*, 11th Dist. No. 2011-A-0040, 2012-Ohio-4457, ¶28. Pursuant to Crim.R. 16(B)(3), the state is required to provide to the defense copies of all hospital records that are reasonably available. If the state fails to abide by the foregoing rule, a three-part test is employed to determine the effect of a violation:

{¶30} "'Prosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefitted the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect.'" *Summers*, at ¶28, quoting *State v. Joseph*, 73 Ohio St.3d 450, 458 (1995).

{¶31} As to the first prong of the foregoing test, there is nothing in the record of this case to indicate that the state intentionally withheld the packet of hospital records from the defense in order to obtain a tactical advantage. Rather, the record supports the conclusion that the state had not been aware of those particular records until they were disclosed by the hospital on the first day of the trial.

{¶32} Regarding the second and third prong, this court would reiterate that the primary aim of the defense case was to establish that appellant did not act purposefully during the altercation. Of the four charges against appellant, only one, the first count of attempted murder, alleged that he had acted purposefully. As noted above, appellant was specifically found not guilty of that charge. Thus, since the defense was able to prevail on the "purposeful" question, the trial record does not support the conclusion that the defense was harmed in its preparation of the case, or that appellant was otherwise denied a fair trial.

8

**{¶33}** While the record does show that Dr. Swegan was permitted to testify in a manner that was consistent with the disputed materials in the packet of records, it also establishes that appellant was not prejudiced by the violation of Crim.R. 16. Therefore, appellant's first assignment is without merit.

**{¶34}** Under his second assignment, appellant submits that, once the trial court indicated that Dr. Swegan would be permitted to review the records packet, his counsel should have moved for a continuance. Appellant claims his trial counsel should have requested more time in which to obtain a medical expert who could have contradicted the doctor's testimony as to where the bullet had entered McPeak's thigh. Based upon this, appellant argues that he was denied effective assistance of trial counsel.

**{¶35}** In relation to this argument, this court would again note that, pursuant to trial counsel's theory of the underlying case, the question of where the bullet entered McPeak's thigh was only pertinent to the issue of whether appellant purposefully fired the gun at him. That is, trial counsel never tried to tie the "entry" question to the issue of whether appellant acted "knowingly" in firing the gun, as is required for felony murder under R.C. 2903.02(B) and felonious assault under R.C. 2903.11(A)(2). Hence, given that the jury never found that appellant acted intentionally, the granting of a continuance would not have had any effect upon the outcome of appellant's trial.

**{¶36}** To demonstrate a claim of ineffective assistance, the criminal defendant must show, *inter alia*, that the result of his trial would have been different in the absence of the alleged inadequate representation. *State v. Kovacic*, 11th Dist. No. 2010-L-065, 2012-Ohio-219, ¶45. In this case, appellant cannot carry this burden because the trial record does not support the conclusion that the lack of a continuance deprived appellant

9

of a fair trial. For this reason, his second assignment is without merit.

{¶37} Under his final assignment, appellant maintains his conviction should be reversed as being against the manifest weight of the evidence. As with his previous two assignments, appellant's argument focuses upon whether the facts of this case justified a finding that he acted purposefully when he fired the gun toward McPeak. According to him, the evidence could only be interpreted to demonstrate that he acted recklessly or negligently.

{¶38} In relation to the infliction of the wound to McPeak's thigh, appellant was only found guilty of attempted felony murder and felonious assault. Prior to discussing the substance of appellant's evidentiary challenge, this court is compelled to address a separate question pertaining solely to the validity of his conviction for attempted felony murder. After oral arguments, we ordered the parties to submit supplemental briefing on the legal issue of whether attempted felony murder is a viable criminal offense under Ohio law. Specifically, the parties were instructed to consider our prior analysis on the issue in *State v. Hendrix*, 11th Dist. No. 2011-L-043, 2012-Ohio-2832. In conjunction with his new submission, appellant has asserted a supplemental assignment of error for review:

{¶39} "Whether as a matter of law, the appellant can be convicted of attempted felony murder when there was no resultant death,"

{¶40} Appellant now contends that his conviction for attempted felony murder must be declared void because, since the death of another person is a required element for felony murder, the offense has no application in situations where the victim survives the incident. In response, the state argues that attempted felony murder is a recognized

10

criminal offense because the Supreme Court of Ohio has expressly upheld convictions for this crime.

{¶41} The basic offense of felony murder is defined in R.C. 2903.02(B):

{¶42} "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *."

{¶43} Under the plain and unambiguous elements for felony murder, the state is not required to prove that the perpetrator acted with a specific mens rea in regard to causing the death of another person. Instead, the state is only obligated to show that the perpetrator had the necessary mens rea to commit the underlying violent offense. In contrast, Ohio's "attempt" statute, R.C. 2923.02(A), contains an express mens rea requirement: "No person, purposely or knowingly, * * *shall engage in conduct that, if successful, would constitute or result in the offense."

{¶44} In light of the respective elements under R.C. 2903.02(B) and 2923.02(A), a charge of "attempted felony murder" creates a purported offense that has conflicting elements. Although an accused must act purposely or knowingly in order to be found guilty of an "attempted" offense, such a state of mind is not needed in causing the death of another under felony murder. The import of this obvious conflict was addressed by this court in *Hendrix*, 2012-Ohio-2832, at ¶70-71:

{¶45} "An 'attempt' is typically referred to as an inchoate crime. *See e.g. In re Phillips*, 5th Dist. No. CT2001-0051, 2002-Ohio-1581, 2002 Ohio App. LEXIS 1624, *7 citing Black's Law Dictionary (6th ed. 1991) 761. In other words, the crime of 'attempt' is committed prior to and in preparation for an additional offense. An attempt requires

11

the specific intent to bring about a criminal result as well as a significant overt act in furtherance of that intent. *See State v. Williams*, 8th Dist. No. 72659, 1999 Ohio App. LEXIS 1446, *19 (Apr.1, 1999). Although an attempt is a complete offense in itself, it presumes the underlying crime for which the offender has prepared has not been completed.

**{¶46}** "Felony murder, alternatively, involves an inadvertent homicide resulting from the commission of a felony of violence. *See e.g. State v. Mays*, 2d Dist. No. 24168, 2012-Ohio-838, ¶6. By definition, therefore, a felony murder charge requires both a felony of violence *and* an unintended death. The victim, in this case, however, survived. Not only is it impossible to attempt to cause an unintended result, one cannot specifically intend to commit a crime that statutorily requires a homicide where no death occurs. We therefore hold the trial court should have dismissed the counts of attempted felony murder and complicity to attempted felony murder as both counts charge crimes which are logically impossible." (Emphasis sic.)

**{¶47}** In responding to appellant's supplemental assignment in this case, the state has not tried to directly refute this court's legal analysis in *Hendrix*. Instead, the state argues that *Hendrix* conflicts with the Ohio Supreme Court's decision in *State v. Williams*, 124 Ohio St.3d 381, 2010-Ohio-147. According to the state, *Williams* stands for the proposition that a criminal defendant can be charged and convicted of attempted felony murder in Ohio.

**{¶48}** In *Williams*, the defendant fired two gunshots in the general vicinity of the victim. Although one of the bullets struck the victim's spine and paralyzed him, he did not die from his injuries. The *Williams* defendant was then indicted on two counts of

12

felonious assault and two counts of attempted murder, including one count of attempted felony murder under R.C. 2903.02(B). After the jury found the defendant guilty on all four counts, the trial court imposed a separate sentence for each offense. *Id.* at ¶6. On appeal, the Eighth Appellate District held that the two counts of felonious assault should have been merged into the two counts of attempted murder, and that the two attempted murders should have then been merged for a single conviction and sentence. *Id.* at ¶10.

{¶49} In accepting the state's appeal in *Williams*, the Ohio Supreme Court only reviewed two issues: (1) are attempted felony murder and felonious assault under R.C. 2903.11(A)(1) allied offenses of similar import; and (2) are attempted "purposeful" murder and felonious assault under R.C. 2903.11(A)(2) allied offenses of similar import? *Id.* at ¶2. In resolving the first issue, the Supreme Court never addressed the question of whether attempted felony murder is a viable criminal offense in Ohio. In fact, there is no indication in the *Williams* opinion that the legal propriety of the attempted felony murder charge was ever challenged by the defendant. Hence, even though the Supreme Court implicitly assumed for the purposes of its limited discussion that the conviction for attempted felony murder was proper, the *Williams* decision is not dispositive of whether attempted felony murder constitutes a valid crime for which a defendant can be tried and convicted.

{¶50} To the foregoing extent, the state has failed to demonstrate that our *Hendrix* holding is inconsistent with any prior Ohio Supreme Court decision. In addition, the state has not cited any other Ohio appellate opinion reaching a different conclusion on the issue. *Cf., State v. Holley,* 2d Dist. Nos. CA 8195 and CA 8224, 1983 Ohio App.

13

LEXIS 12089 (Nov. 28, 1983).  Moreover, our review of various decisions in other states establishes that *Hendrix* is consistent with the majority view.  This point was recently discussed by an Arizona state appellate court in *State v. Moore*, 218 Ariz. 534, 189 P.3d 1107, 1110 (App.Div.1, 2008):

{¶51} "Finally, the overwhelming majority of state courts that have addressed whether attempted felony murder is a cognizable crime have reached the same conclusion.  *See* [*People v.*] *Patterson*, 257 Cal. Rptr. at 409; *State v. Gray*, 654 So. 2d 552 (Fla. 1995); *State v. Pratt*, 125 Idaho 546, 873 P.2d 800, 812 (Idaho 1993) ('*Attempted* felony murder is not a crime in Idaho.  Instead, there is either the crime of murder, or the crime of attempt to commit a crime, in which case the state bears the burden of proving that the defendant *intended* to commit the crime.'); *People v. Viser*, 62 Ill. 2d 568, 343 N.E.2d 903, 910 (Ill. 1975) ('(T)he offense of attempt requires an "intent to commit a specific offense", while the distinct characteristic of felony murder is that it does not involve an intention to kill.  There is no such criminal offense as an attempt to achieve an unintended result.') (citations omitted); *Head* [*v. State*], 443 N.E.2d at 50 [(Ind. 1982)]; [*State v.*] *Robinson*, 883 P.2d at 767 [(Kan. 1994)]; *Bruce v. State*, 317 Md. 642, 566 A.2d 103, 105 (Md. 1989) ('Because a conviction for felony murder requires no specific intent to kill, it follows that because a criminal attempt is a specific intent crime, attempted felony murder is not a crime in Maryland.') *State v. Dahlstrom*, 276 Minn. 301, 150 N.W.2d 53 (Minn. 1967); *State v. Darby*, 200 N.J. Super. 327, 491 A.2d 733, 736 (N.J. Super. Ct. App. Div. 1984) ('"Attempted felony murder" is a self-contradiction, for one does not "attempt" an unintended result.'); *State v. Price*, 104 N.M. 703, 726 P.2d 857, 860 (N.M. Ct. App. 1986) ('Thus, the result-

14

oriented nature of the doctrine and the unpopularity of felony murder are among the concerns which persuade us not to recognize the crime of attempted felony murder.'); *State v. Kimbrough*, 924 S.W.2d 888 (Tenn. 1996); *Goodson v. Virginia*, 467 S.E.2d 848, 853-56, 22 Va. App. 61 (Va. Ct. App. 1996) ('We join the majority of states and hold that, in order for a felony murder analysis to be applicable, a homicide must occur.'); *In re Richey*, 175 P.3d 585, 587, 162 Wn.2d 865 (Wash. 2008). *But see White v. State*, 266 Ark. 499, 585 S.W.2d 952 (Ark. 1979) (finding that attempted felony murder is a cognizable offense in Arkansas)."

**{¶52}** Given the lack of any conflicting authority in Ohio and the nature of the analysis followed by the vast majority of courts in other states, this court concludes that the *Hendrix* holding shall continue to be binding authority in this jurisdiction. That is, attempted felony murder is not a viable criminal offense. When the victim of a violent felony offense does not die as a result of his injuries, the defendant can be charged with attempted murder only if he purposely intended to cause the victim's death. If such a mens rea cannot be proven, the defendant can only be indicted on whatever underlying "assault" offense is applicable under the facts of the case.

**{¶53}** In this case, McPeak was able to survive the injury to his thigh. As a result, the jury should have only been allowed to consider the "purposeful" attempted murder count under R.C. 2903.02(A). Because attempted felony murder constitutes a logical impossibility which cannot be charged as a criminal offense, it was plain error for the trial court to permit the state to go forward on that count. As the count of attempted felony murder should have been dismissed, appellant's supplemental assignment has merit.

{¶54} In light of the foregoing, it is only necessary to consider appellant's "manifest weight" argument in regard to his conviction for felonious assault. As to that offense, appellant was charged under R.C. 2903.11(A)(2):

{¶55} "(A) No person shall knowingly do either of the following:

{¶56} "* * *

{¶57} "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordinance."

{¶58} The mens rea for felonious assault is "knowingly." Therefore, the state was required to demonstrate that appellant acted knowingly in firing the gun. There was no burden to show that appellant committed an intentional act.

{¶59} The term "knowingly" is defined in R.C. 2901.22(B):

{¶60} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."

{¶61} There is no dispute that when appellant grabbed the firearm from his sweatshirt pocket and pointed it at McPeak, they were only standing a few feet apart. Furthermore, although appellant and Joshua Tipton both testified that appellant pointed the gun in a downward fashion, there was also no dispute that the gun was pointed toward McPeak. Thus, this was not a situation in which appellant fired the gun into the air or in the opposite direction. Even though appellant did not shoot at McPeak's head or torso, he did fire in the general direction of McPeak's legs.

{¶62} Based upon these facts, the jury could readily find that appellant had been aware that, by firing the gun in this manner, it was probable that the bullet would hit

16

McPeak and impose physical harm to him. Therefore, the "mens rea" element for felonious assault was satisfied.

{¶63} As a general proposition, a conviction will not be reversed as against the manifest weight of the evidence unless the record shows that the jury lost its way in its consideration of the evidence. *Kovacic*, 2012-Ohio-219, at ¶37. In this case, there was substantial evidence upon which the jury could logically find that, even though appellant did not act intentionally, he did act knowingly. Accordingly, since the conviction for felonious assault was supported by the evidence, appellant's third assignment is without merit.

{¶64} Consistent with the foregoing analysis, appellant's supplemental assignment of error is well-taken. Therefore, the judgment of the Portage County Court of Common Pleas is reversed in part, and the case is hereby remanded for further proceedings, in which the trial court shall dismiss the count of attempted felony murder and re-sentence appellant on the two remaining counts and firearm specification. In all other respects, the judgment of the trial court is affirmed.


TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.