COMMONWEALTH *vs.* CHARLES S. GLINIEWICZ
(and five companion cases[1]).

Plymouth.    October 9, 1986. — December 9, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Criminal,* Pretrial conference, Discovery, Duplicitous convic-
tions. *Search and Seizure,* Arrest. *Constitutional Law,* Double jeopardy.
*Error,* Harmless.

Criminal defendants were entitled to new trials on the ground that certain
items which had been the subject of a pretrial written agreement to
produce for inspection were altered by experts for the Commonwealth
in the process of testing for human blood so that comparable testing by
the defendants was no longer possible, where the items were effectively
destroyed in the testing process and their destruction was intended, or
at least condoned, by the Commonwealth, and where the evidence was
material and its destruction resulted in prejudice to the defendants. [746-
749]
The judge at a criminal trial did not err in denying a defendant's motion
to suppress his boots which, having been taken from him pursuant to
official police policy after the defendant had been booked and before
he had been placed in a cell, were seized, tagged as evidence, and sent
to State police headquarters for examination. [749-750]
A criminal defendant's convictions of breaking and entering a building in
the nighttime and assault and battery with a dangerous weapon, although
arising from a single incident, were not duplicitous. [750-751]


INDICTMENTS found and returned in the Superior Court De-
partment on April 12 and 13, 1982.

The cases were tried before *Augustus F. Wagner, Jr., J.*

The Supreme Judicial Court on its own initiative transferred
the cases from the Appeals Court.

*Donald A. Harwood* for Charles S. Gliniewicz.

---

[1] Two against Charles S. Gliniewicz and three against John A. Durning,
Jr. The defendants were tried together in the Superior Court.

*John P. Corbett,* Assistant District Attorney, for the Commonwealth.

*Andrew Silverman,* Committee for Public Counsel Services, for John A. Durning, Jr.

LYNCH, J. After a jury trial in the Superior Court the defendants, Charles S. Gliniewicz and John A. Durning, Jr., were each found guilty on two indictments charging assault and battery with a dangerous weapon, and one charging breaking and entering a building in the nighttime.[2] They were each found not guilty on two indictments charging armed assault with intent to commit murder.

Each defendant was sentenced to an eight to ten year term at the Massachusetts Correctional Institution, Cedar Junction, on the assault and battery convictions. They were sentenced to twelve to twenty year terms on the breaking and entering convictions, to run from and after the other sentences. The defendants appeal from their convictions and from the denial of their motions for new trials. We took the cases on our own motion and remand for new trials.

Both defendants contend that the trial judge erred in denying their motions to suppress certain serological test results that showed the presence of blood on their boots. Gliniewicz raises two arguments not raised by Durning: that the trial judge erred in denying Gliniewicz's motion to suppress his boots, and that the imposition of a consecutive sentence violates his right to be free from double jeopardy.

The convictions stemmed from an incident on January 27, 1982, at Ralph Costello's Italian Canteen in Bridgewater (canteen). In the early morning hours, Ralph Costello and his brother, Anthony Costello, were awakened by two intruders who had broken into the canteen and entered the room upstairs where the brothers were sleeping. An altercation ensued, and both brothers were stabbed.

---

[2] The defendants were charged with violation of G. L. c. 266, § 14 (1984 ed.), which forbids breaking and entering a dwelling in the nighttime with intent to commit a felony and committing armed assault on a person in such dwelling. They were found guilty of the lesser included offense of breaking and entering a building in the nighttime.

Both defendants had patronized the canteen on the evening of January 26, 1982. Ralph Costello testified that after closing time he saw the defendants "two corners up" from the canteen. Ralph Costello identified the defendants as the intruders who stabbed him and his brother.

During the investigation at the crime scene, the police found bootprints apparently left by the intruders. The prints were photographed and introduced at trial. A pair of workboots was seized from Gliniewicz on March 17, 1982, and from Durning on March 27, 1982.

In June, 1982, the boots of both defendants were chemically tested by Robert Sullivan of the Department of Public Safety in Boston. He found no blood on either pair of boots. In August, 1982, the boots were delivered to John Abbott, a forensic serologist employed by Serological Research Institute of Burlington. He conducted tests which, he testified, were capable of detecting far smaller quantities of blood than the tests conducted by Sullivan.[3] Abbott found evidence of human blood on the boots of both defendants.

Prior to trial, both defendants filed motions to suppress the results of the serological tests conducted by Abbott. Both motions were denied.

1. *Motions to suppress the serological tests by Abbott.* The defendants argue that their due process rights have been violated because pretrial tests performed on their boots destroyed the evidence from which the Commonwealth's expert concluded that the boots were stained with human blood. The pretrial conference report executed under the provisions of Mass. R. Crim. P. 11 (a) (2) (A), 378 Mass. 862 (1979), required the Commonwealth to allow the inspection of "material and relevant physical evidence and documents . . . [i.e.] boots, knives, pictures and any other physical evidence . . . ." It also required the Commonwealth to provide to the defendant in writing, "reports . . . of scientific tests." The date for such discovery was to be on or before June 10, 1982; the date was subsequently extended to July 22, 1982, for the defendant Durning. Because

---

[3] The tests conducted by Abbott are described in more detail, *infra.*

we conclude that the Commonwealth did not meet its obligations under the pretrial conference report, we order that the defendants be afforded new trials and we do not reach the due process claims.

Massachusetts R. Crim. P. 11 (a) (2) (A) states, in pertinent part: "The conference report shall contain a statement of those matters upon which the parties have reached agreement . . . . Agreements reduced to writing in the conference report shall be binding on the parties and shall control the subsequent course of the proceeding." Such agreements reduced to writing may be equivalent to discovery orders. *Commonwealth* v. *Pope,* 19 Mass. App. Ct. 627, 630 n.3 (1985). *Commonwealth* v. *Scalley,* 17 Mass. App. Ct. 224, 230 n.8 (1983).

This court has upheld a trial judge's denial of a motion to exclude testimony where the statement was belatedly disclosed in contravention of a discovery agreement but where the defendant made no showing of prejudice. *Commonwealth* v. *Cundriff,* 382 Mass. 137, 148-151 (1980), cert. denied, 451 U.S. 973 (1981). See also *Commonwealth* v. *Pope, supra* at 629-631 (denial of motion to exclude belatedly disclosed witness upheld where discovery agreement violated but defendant made no showing of prejudice).

Additionally, this court has held that remedial action under Mass. R. Crim. P. 14 (c) (1), 378 Mass. 874 (1979), was warranted as a sanction for noncompliance with a discovery order where the prosecutor's failure to disclose exculpatory evidence violated both the defendant's constitutional rights and a court order, and prejudice resulted. *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 310 (1984). The granting of a motion to dismiss (rather than a new trial) would be an appropriate remedy "where failure to comply with discovery procedures results in irremediable harm to a defendant that prevents the possibility of a fair trial." *Id.* at 314. See also *Commonwealth* v. *Murchison,* 392 Mass. 273, 276 (1984).

In the present case we are confronted with a different situation, the destruction of evidence by the Commonwealth in the process of testing, which evidence was the subject of a pretrial written agreement to produce for inspection. When the boots of both defendants were delivered to Abbott for testing,

the assistant district attorney authorized Abbott to do whatever he needed to the boots, including cutting into them. The defendants claim that this violated the pretrial agreement to permit defense inspection of the boots. We agree.

The testing of the defendants' boots, conducted by Abbott involved a two-step process. The first was an ortho-tolidine test whereby a small section of the item to be tested was wiped with filter papers. The papers were then treated with chemicals and the reaction indicated the presence or absence of blood. This procedure initially requires a subjective determination regarding the rapidity of development and intensity of the change in color in assessing the presence of blood.

The second step was electrophoresis, which involved preparing liquid extracts from a piece of the boot of one of the defendants and the lace of the boot of the other defendant. The liquids were then poured into a gel substance and treated with electric current to detect the presence of protein material. Abbott's analytical report dated September 8, 1982, found that "[t]races of human blood were demonstrated to be present" on the lacing of the right boot of Durning, and on the top stitching of the toe area of the left boot of Gliniewicz. Abbott further stated, "The quantity was insufficient for further testing." Blood was not detected on the other boots.

The pretrial agreement was violated because the boots had been altered by the testing so that comparable testing by the defendants was not possible. In denying the defendants' motions to suppress the results of the tests done by Abbott, the judge found that no prejudice to the defendants was demonstrated "because the crucial evidence has been effectively preserved." No one disputes the fact that the sections of the defendants' boots that tested positive were destroyed in the testing. While the results of the tests may have been available, there was no way to duplicate those tests. The trial judge himself acknowledged this. "Although Mr. Abbott necessarily consumed the blood samples and no further tests may now be conducted to duplicate his results or to further analyze the substance in question, the results of his testing are available for the examination of the defendants' experts." Thus, in ruling

on the motions to suppress, the judge erred when he concluded that there was no prejudice to the defendants.

Furthermore, the defendants received no notice of the impending tests, and thus were not able to have their own expert present to observe and potentially to refute the subjective aspects of the testing.

Here we have a case where there was a pretrial agreement to provide items for inspection, the items were effectively destroyed by the Commonwealth, the destruction was intentional or at least condoned by the Commonwealth, the evidence was material and its destruction resulted in prejudice to the defendants. In such circumstances, we conclude that it was unfair for the Commonwealth to make use of the tests. To make matters worse, the prosecutor commented in his closing argument that the positive results obtained by Abbott were "not [ones] refuted by any expert testimony by the defense." The motions to suppress the results of the tests should have been granted and the defendants must have new trials.

It is necessary that we comment on the two separate issues raised by Gliniewicz, as they may arise at retrial.

2. *Seizure of the boots.* Gliniewicz challenges the judge's denial of his motion to suppress a pair of boots taken from him when he was arrested. Gliniewicz claims that there was no justification for a warrantless seizure of his boots. At the hearing on the motion to suppress, Officer Donald Shoemaker testified that Gliniewicz was arrested on March 13, 1982, pursuant to an arrest warrant and that he never obtained a search warrant in relation to Gliniewicz. In the course of executing the arrest warrant, he told the defendant to get dressed, the defendant did so, and he was then taken to the police station. Pursuant to official policy, the boots were taken from the defendant after he was booked and before he was placed in a cell. After the boots were taken, Officer Shoemaker noticed that: the soles of the boots appeared similar to the tread on the bootprints observed in the canteen on the day of the incident; they appeared to be the boots the defendant was wearing the day when he was interviewed; and the boots appeared to have bloodstains on them. After making these observations, Officer

Shoemaker seized the boots, tagged them as evidence, and subsequently sent them to State police headquarters for examination.

Once a defendant has been arrested and is in custody, clothing that constitutes evidence may be taken from him. *United States* v. *Edwards,* 415 U.S. 800, 808 (1974). *Commonwealth* v. *Appleby,* 358 Mass. 407, 412-413 (1970). Moreover, an inventory search conducted without a warrant has been upheld where it was conducted in accordance with standard police procedure and was not a pretext for a search. See *Commonwealth* v. *Hason,* 387 Mass. 169, 177-178 (1982). It is clear, therefore, that the seizure of the boots did not violate Gliniewicz's constitutional rights. The denial of the motion to suppress the boots was not error.

3. *Double jeopardy challenge by Gliniewicz.* Gliniewicz claims that his right to be free from double jeopardy was violated by the imposition of consecutive sentences. Although the defendant did not raise such a challenge at sentencing, this court may take notice on its own motion of duplication of sentences. See *Commonwealth* v. *Stewart,* 375 Mass. 380, 393 (1978). Consecutive sentences are disallowed where "one crime could have been proved completely by evidence forming part of the necessary proof of the other crime." *Commonwealth* v. *Hogan,* 379 Mass. 190, 194 (1979), citing *Commonwealth* v. *Stewart, supra* at 390-393. See *Commonwealth* v. *Jones,* 382 Mass. 387, 395 (1981) (protection against multiple punishments for duplicitous convictions extends to concurrent as well as consecutive sentences). Similarly, they may not be imposed unless the conviction of one offense requires proof of an additional fact not required for the conviction of the other offense. *Commonwealth* v. *Ford,* 397 Mass. 298, 302 (1986), citing *Morey* v. *Commonwealth,* 108 Mass. 433, 434 (1871). See *Commonwealth* v. *Hogan, supra* at 195. The defendant Gliniewicz was charged with violating G. L. c. 266, § 14, which proscribes breaking and entering a dwelling in the nighttime with intent to commit a felony and being armed or committing armed assault after such breaking and entering. The felony alleged was burglary. He was convicted of the lesser

included crime of breaking and entering a building in the night-time. He was also convicted of violating G. L. c. 265, § 15A, assault and battery by means of a dangerous weapon. The crime of breaking and entering in the nighttime does not involve assault and battery or the use of a dangerous weapon. The sentences were not duplicative.

The judgments are reversed, the verdicts set aside, and the cases remanded to the Superior Court for new trials.

*So ordered.*