STATE of South Dakota, Plaintiff
and Appellee.

v.

Gerald K. LYERLA, Defendant
and Appellant.

No. 15446.

Supreme Court of South Dakota.

Argued May 20, 1987.

Decided June 8, 1988.

Roger Tellinghuisen, Atty. Gen., John W. Bastian, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

James E. Carlon, Pierre, for defendant and appellant.

KONENKAMP, Circuit Judge.

A jury convicted Gerald K. Lyerla (Lyerla) of second degree murder and two counts of attempted second degree murder. We affirm the second degree murder conviction, but reverse the convictions for attempted second degree murder.

On the night of January 18, 1986, while driving east on Interstate 90 in Haakon County, Lyerla fired three shots with his .357 magnum pistol at a pickup truck carrying three teenage girls. One was

killed, the other two were injured. Only one bullet entered the pickup cab, the one that killed seventeen-year-old Tammy Jensen. Another bullet was recovered from the engine block; the third was never found. Lyerla fled the scene, but was later apprehended. He was charged in the alternative with first degree murder or second degree murder for the death of Tammy Jensen and two counts each of attempted first degree murder and alternatively two counts of attempted second degree murder of the two surviving girls.

Before the shooting, the teenagers and Lyerla were traveling in the same direction. The vehicles passed each other a few times. At one point when Lyerla tried to pass the girls, their truck accelerated so that he could not overtake them. Lyerla decided to leave the interstate. When he exited, the Jensen pickup pulled to the side of the road near the entry ramp. Lyerla loaded his pistol, reentered the interstate and passed the Jensen pickup. When the girls attempted to pass him, he fired at the passenger side of their truck.

At his trial, Lyerla told the jury that the teenagers were harassing him to such an extent that he feared for his life and fired the shots to disable their pickup. The two girls gave a different rendition of the events leading up to the shooting, but the prosecutor conceded in closing argument that Tammy Jensen was "trying to play games" with Lyerla by not letting him pass. Both Lyerla's version and that of the girls had a number of discrepancies. We view these inconsistencies to have been resolved by the jury's verdicts.

## STATE'S BREACH OF DISCOVERY RULES

The D.C.I. and local law enforcement officials repaired the Jensen vehicle and per-

formed a number of tests on it. Afterward they cleaned it and disposed of glass particles and the blood stained seat covers. On February 20, 1986, without notifying defense counsel, in contravention of South Dakota law, the state's attorney authorized the truck's release to the Jensen family. Lyerla argues that exculpatory evidence was irretrievably lost as a result: evidence which could have impeached the credibility of the two sisters who were riding in the Jensen pickup at the time of the shooting.

Although he testified he could not see who was in the pickup truck when he fired at it, Lyerla believes that Tammy Jensen was not the driver. The two surviving teenagers maintained she was. From the position of the body as it lay on the seat and the location of blood stains about the cab as shown in photographs taken at the scene, Lyerla deduces that Tammy Jensen was a passenger at the time she was shot and that one of the other two girls was driving.[1] A pathologist testified for the defense. If a blood stain on the passenger side of the truck's rear window came from the deceased when she was shot in the head, the pathologist may have been able to detect the presence of brain matter in the blood stain if a sample had been taken, possibly showing that Tammy Jensen was a passenger.[2] Because the pickup was cleaned and returned to the Jensen family before the defense could request the necessary tests, the opportunity to fully demonstrate this theory was undermined. Blood stain analysis on other stains in the truck were inconclusive.

Also, if glass particles from the shattered right passenger window had been preserved, Lyerla argues that they may have revealed the angle of the bullet that killed the deceased and where she sat at the time the bullet struck her. Had he

1. The two teenagers testified that after the deceased was shot, they moved the body in order to try and drive the truck to the closest telephone to get help, but the truck was disabled.

2. One of the surviving teens was seriously injured by glass fragments and some of the blood stains were undoubtedly from her wounds. The

defense pathologist hypothesized that the blood stain on the passenger side of the rear window was from the deceased. The presence of brain matter in this stain would have further cemented this hypothesis. Yet whether brain matter could have been found in the stain, if it had not been cleaned, remains speculation.

been able to prove that the deceased was not the driver, Lyerla believes the credibility of the two surviving girls would have been impeached to such an extent that he would have been acquitted.

South Dakota law prohibits the release of evidence without notice to the defendant in a criminal case. SDCL 23A–37–14 provides:

> Any property, which is not contraband, seized or confiscated by law enforcement personnel, ostensibly for use as evidence in a criminal prosecution, shall be preserved, maintained or stored at the expense of the county where the criminal offense occurred. If the property is not contraband and is owned by a victim of the crime being investigated, the property shall be photographed by the appropriate law enforcement personnel and returned to the victim of the crime within thirty days of completion of forensic analysis, unless the prosecuting attorney deems it essential to the prosecution of the case to retain the evidence. The photographs shall accurately and correctly represent the property and are admissible evidence pursuant to chapter 19–18 in any resulting criminal proceeding.

SDCL 23A–37–15 provides:

> Before any property is returned to the owner pursuant to 23A–37–14, the law enforcement personnel in possession of the property shall notify the defendant that the property will be returned to the owner. Upon a motion made by the defendant and upon good cause shown that the property contains exculpatory evidence of the defendant's innocence, the court may order the law enforcement personnel in possession of the property not to release it to the owner.

There is no indication that the state acted in a calculated effort to destroy or suppress exculpatory evidence.[3] Yet, regardless of the prosecutor's good faith or bad faith, the government's destruction of evi-

dence favorable to an accused violates due process where the evidence requested by the accused is material either to guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Impeachment evidence falls within the *Brady* rule. *State v. Hartley,* 326 N.W.2d 226 (S.D.1982). We held in *State v. Collier,* 381 N.W.2d 269, 272 (S.D.1986):

> The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence. Therefore, the nondisclosure of evidence affecting the credibility of witnesses also violates due process. (Citations omitted.)

In determining whether the prosecution's suppression of evidence violates due process, the focus should be on the influence nondisclosure had on the outcome of the trial. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *State v. Clabaugh,* 346 N.W.2d 448 (S.D. 1984); *State v. Cody,* 323 N.W.2d 863 (S.D. 1982). A new trial is the usual remedy for prosecutorial nondisclosure of exculpatory evidence. Annotation, *Withholding or Suppression of Evidence by Prosecution in Criminal Convictions as Vitiating Conviction,* 34 ALR3d 16 (1970). For inadvertently destroyed evidence, on the other hand, the United States Supreme Court observed in *California v. Trombetta,* 467 U.S. 479, 486, 104 S.Ct. 2528, 2533, 81 L.Ed.2d 413, 420–421 (1984):

> The absence of doctrinal development in this area reflects, in part, the difficulty of developing rules to deal with evidence destroyed through prosecutorial neglect or oversight. Whenever potentially exculpatory evidence is permanently lost, the courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed. (Citations omitted.) More-

---

**3.** In noting this, we in no way wish to give the impression we approve the state's careless act of releasing the vehicle in violation of the statute.

over, fashioning remedies for the illegal destruction of evidence can pose troubling choices. In nondisclosure cases, a court can grant the defendant a new trial at which the previously suppressed evidence may be introduced. But when evidence has been destroyed in violation of the Constitution, the court must choose between barring further prosecution or suppressing ... the State's most probative evidence.

■ Although we are satisfied the prosecutor violated state law in authorizing the release of the Jensen vehicle, we hold that it does not automatically vitiate the conviction. *Cf. Commonwealth v. Gliniewicz*, 398 Mass. 744, 500 N.E.2d 1324 (1986). The rule concerning negligently destroyed evidence provides:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, (citation omitted) evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be able to obtain comparable evidence by other reasonably available means. (Footnote omitted.)

*Trombetta*, 467 U.S. at 488–489, 104 S.Ct. at 2534, 81 L.Ed.2d at 422.

Was the exculpatory value of the evidence apparent before it was destroyed? Through oversight the prosecutor authorized release of the Jensen pickup truck. He could not have known, however, that Lyerla would assert a theory about there being a different driver and that a blood stain on the rear window might demonstrate this hypothesis. Nor could the state reasonably anticipate that an apparently senseless shooting of a teenage girl on the interstate highway would generate a claim of justification. *See People v. Bradley*, 159 Cal.App.3d 399, 205 Cal.Rptr. 485 (1984). The defendant did not assert these matters until after the prosecution rested its case. Furthermore, except as material for impeachment, is it critical who was driving? After all, Lyerla said he shot at the vehicle to disable it to avoid further harassment from its faceless occupants. If he shot a passenger rather than the driver as he contends, such does not enhance his self-defense argument.

Was Lyerla able to obtain comparable evidence by reasonably available means? If he intended to use the destroyed evidence to impeach the state's witnesses, Lyerla had plenty of other grist for that. Lyerla presented testimony through cross-examination of the state's witnesses and his own witnesses from which the jury could have concluded the deceased was not the driver. Numerous photographs of the vehicle were taken immediately after the shooting showing the location of the blood stains and the placement of the deceased's body. Lyerla used photographs of stains on the passenger door, passenger side of the floor board, the rear window and the passenger seat, along with defense experts' tests on the Jensen pickup, to argue that the deceased was not in the driver's seat when she was shot. Discrepancies in the two girls' versions of what happened were also ably used to cast doubt on the issue of who was driving the Jensen vehicle. Although not identical to the lost evidence, comparable evidence was available for Lyerla to fully assert his defense.

Did the trial court take action to remedy the problem and minimize prejudice? As soon as the matter was brought to the court's attention it ordered the truck's retrieval from the Jensen family. The pickup was then turned over to defense experts who conducted their own tests the results of which were used at trial to bolster Lyerla's theory.

We conclude that although the state improperly destroyed evidence, the trial court did not err in denying defendant's motions to suppress and dismiss.

## ATTEMPTED SECOND DEGREE MURDER

Lyerla argues that it is a legal impossibility to attempt to commit murder in the

second degree and his two convictions for this offense should be reversed. Lyerla did not object to the court's instructions on attempted second degree murder.[4] Ordinarily we will not consider questions on allegedly erroneous instructions unless the defendant made a timely objection to them. SDCL 23A-25-4; SDCL 15-6-51; *Fales v. Kaupp*, 83 S.D. 487, 161 N.W.2d 855 (1968); *State v. White Mountain*, 332 N.W.2d 726 (S.D.1983).

■ Criminal offenses are created only by statute. SDCL 22-1-8. If attempted second degree murder is not a crime in South Dakota, then a defendant's failure to object cannot establish that crime. Jurisdictional defects are not waived by failure to object. *Honomichl v. State*, 333 N.W.2d 797 (S.D.1983). In *Honomichl* we held:

> Subject matter jurisdiction cannot be conferred by agreement, consent, or waiver. (Citation omitted.) A reviewing court is required to consider the issue of subject matter jurisdiction even where it is not raised below in order to avoid an unwarranted exercise of judicial authority.

In order to attempt to commit a crime, there must exist in the mind of the perpetrator the specific intent to commit the acts constituting the offense. *State v. Primeaux*, 328 N.W.2d 256 (S.D.1982); *State v. Poss*, 298 N.W.2d 80 (S.D.1980); *State v. Rash*, 294 N.W.2d 416 (S.D.1980); *State v. Martinez*, 88 S.D. 369, 220 N.W.2d 530 (1974); *State v. Judge*, 81 S.D. 128, 131 N.W.2d 573 (1964). To attempt second degree murder one must intend to have a criminally reckless state of mind, i.e. perpetrating an imminently dangerous act while evincing a depraved mind, regardless of human life, but without a design to kill any particular person.

■ Whether there can be such a crime as attempted second degree murder has never been determined in South Dakota. Interpreting a similar statute the Minnesota Supreme Court ruled in *State v. Dahlstrom*, 276 Minn. 301, 150 N.W.2d 53 (1967):

> We do not conceive of any practical basis upon which the jury could have found defendant guilty of attempted murder in the third degree. Philosophically, it might be possible to attempt to perpetrate an act imminently dangerous to others and evincing a depraved mind regardless of human life within the mean-

---

4. In various instructions the trial court framed the elements of attempted second degree murder:

Instruction No. 15

The essential elements of murder in the second degree ... are:
1. That the defendant at the time and place alleged in the Indictment inflicted an injury or injuries upon Tammy Jensen from which the said Tammy Jensen died.
2. That the defendant did so by perpetrating an act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual.
3. That the killing was not justifiable homicide or excusable homicide.

Instruction No. 20

The essential elements of the offense of attempting to commit crime as charged, each of which the state must prove beyond a reasonable doubt, are:
1. That the defendant has the *specific intent to commit the crime of* murder in the first degree as charged in counts III and V or *murder in the second degree* as charged in counts IV and VI; and

2. That at the time and place alleged in the Indictment he did a direct act in the execution of such specific intent and toward the execution of the crime; and
3. That he failed or was prevented or was intercepted in the perpetration of the crime.
4. That the conduct alleged in the Indictment as an attempt to commit a crime was without justification or without excusable cause.

Instruction No. 37

In the crimes of murder in the second degree and attempted murder in the second degree, *a criminal intent must exist at the time the act or acts are committed or attempted.*

To constitute criminal intent it is not necessary that one intends to violate the law. Where one intentionally does that which the law says is a crime, he is acting with criminal intent, even though he may not actually know that this conduct is unlawful. The intent with which an act is done is shown by the circumstances attending the act, the manner in which it is done, the means used, and the sound mind and discretion of the person committing the act. (Emphasis added.)

ing of the phrase as used in 609.195, defining murder in the third degree.... But we cannot conceive of a factual situation which could make such conduct attempted murder in the third degree where the actor did not intend the death of anyone and where no death occurred.

Unlike the *Dahlstrom* case, a death occurred here, but the jury obviously decided that Lyerla did not intend the death of the deceased since he was found guilty of the lesser count of second degree murder. Nor did he intend to kill the other two girls as the verdicts for attempted second degree murder confirm.

Other courts have likewise found attempted reckless homicide a logical impossibility. In *People v. Perez*, 108 Misc.2d 65, 437 N.Y.S.2d 46, 48 (1981) it was stated:

> However, murder in the second degree under PL 125.25 subdivision 2, involves no intent but instead requires a culpable mental state of recklessness. One may not intentionally attempt to cause the death of another by a reckless act. (Citations omitted.)

The Colorado Supreme Court held:

> An attempt to commit criminal negligent homicide thus requires proof that the defendant intended to perpetrate an unintended killing—a logical impossibility. The words "attempt" and "negligence" are at war with one another; they are internally inconsistent and cannot sensibly co-exist.

*People v. Hernandez*, 44 Colo.App. 161, 614 P.2d 900, 901 (1980). *See also State v. Melvin*, 49 Wis.2d 246, 181 N.W.2d 490 (1970) and *State v. Carter*, 44 Wis.2d 151, 170 N.W.2d 681 (1969) where it was held under a statute similar to our own that the crime of attempted second degree murder does not exist. We agree with the reasoning of these courts. Stating the rule most succinctly:

> To commit murder, one need not intend to take life; but to be guilty of an attempt to murder, he must so intend. It is not sufficient that his act, had it proved fatal, would have been murder.

*Merritt v. Commonwealth*, 164 Va. 653, 180 S.E. 395 (1935).

Lyerla also asserts error concerning insufficient evidence for the second degree murder conviction, improper jury instructions on intent, failure to open one teenager's juvenile record, failure to disclose a witness's alleged forty-year-old felony, lack of a grand jury transcript, eyewitness identification, and character evidence. These arguments lack sufficient merit for discussion. Defendant's convictions for attempted second degree murder are reversed. In all other respects, the judgment of the trial court is affirmed.

MORGAN, and HENDERSON, JJ., concur.

WUEST, C.J., concurs specially.

SABERS, J., dissents.

KONENKAMP, Circuit Judge, for MILLER, J., disqualified.

WUEST, Chief Justice (special concurrence).

I concur in the majority opinion. Evidence of which girl was driving the pickup was admissible as a part of the transaction or res gestae. Such evidence, however, is not relevant to the defendant's guilt on charges of second degree murder. Defendant testified that the girls were harassing him to such an extent that he feared for his life and fired the shots to disable their pickup. In addition, the prosecutor conceded in his closing argument that the girls were harassing the defendant. Thus, the issue was whether the defendant killed Tammy Jensen by perpetrating "an act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual" (SDCL 22–16–7), and, in so killing her, did not commit justifiable or excusable homicide.

SABERS, Justice (dissenting).

I dissent from the majority opinion on "attempted second degree murder."

Lyerla argues that it is a legal impossibility to attempt to commit murder in the second degree and his two convictions for this offense should be reversed. Since Lyerla did not object to the jury instructions on attempted second-degree murder, he now argues plain error. However, an argument based on plain error cannot succeed where there is no error.

The majority frames the question in a different manner, as follows: "If attempted second degree murder is not a crime in South Dakota, then a defendant's failure to object cannot establish that crime." I agree with that statement of the law by the majority and with their statement that "[i]n order to attempt to commit a crime, there must exist in the mind of the perpetrator the specific intent to commit the acts constituting the offense." *Citing State v. Primeaux*, 328 N.W.2d 256 (S.D.1982); *State v. Poss*, 298 N.W.2d 80 (S.D.1980); *State v. Rash*, 294 N.W.2d 416 (S.D.1980); *State v. Martinez*, 88 S.D. 369, 220 N.W.2d 530 (1974); and *State v. Judge*, 81 S.D. 128, 131 N.W.2d 573 (1964). More specifically, I agree that "[t]o attempt second degree murder one must intend to have a criminally reckless state of mind, i.e. perpetrating an imminently dangerous act while evincing a depraved mind, regardless of human life, but without a design to kill any particular person." However, the majority also cites the Minnesota Supreme Court case of *State v. Dahlstrom*, 276 Minn. 301, 307, 150 N.W.2d 53, 59 (1967) in part as follows:

"... But we cannot conceive of a factual situation which could make such conduct attempted murder in the third degree where the actor did not intend the death of anyone and where no death occurred."

That concept is not that difficult:

For example, knowing he is a bad shot, A attempts to shoot B's eyelashes off from fifty feet away

—if A misses and kills B, it constitutes second-degree murder under South Dakota law;

—if A misses and wounds B, it constitutes attempted second-degree murder under South Dakota law;

—if A misses all together, it may constitute attempted second-degree murder under South Dakota law.

I agree with the majority that the jury obviously decided that Lyerla did not intend the death of the deceased since he was found guilty of the lesser count of second-degree murder. Nor did he intend to kill the other two girls as the verdicts for attempted second-degree murder confirm. However, had his acts resulted in their deaths, either directly as in the case of Tammy Jensen, or indirectly, through a resulting car accident, he would have been guilty of second-degree murder. Since deaths did not result he was guilty of attempted second-degree murder under South Dakota law.

SDCL 22–4–1 provides:

"Any person who attempts to commit a crime and in the attempt does any act toward the commission of the crime, but fails or is prevented or intercepted in the perpetration thereof, is punishable where no provision is made by law for the punishment of such attempt[.]"

SDCL 22–16–7 provides:

"Homicide is murder in the second degree when perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual."

This statute deals with "homicide" which is named "murder in the second degree." Neither statute contains an element of specific intent. SDCL 22–16–7 simply requires an act. The act required must be dangerous to others (or stupid) under South Dakota law. If one attempts a "dangerous" or "stupid" act it is sufficient. The only "intent" or "attempt" necessary is a voluntary as opposed to a non-volitional or forced act. In this case, Lyerla clearly attempted the dangerous and stupid act of pulling the trigger and shooting the gun at or near the people or the car in which they were riding. This is sufficient for attempted second-de-

gree murder under South Dakota law. SDCL 22–16–7 and SDCL 22–4–1.

The cases from other jurisdictions cited by Lyerla have a common flaw. In each case the attempt statute contains an element of specific intent while the standard of culpability otherwise required for the commission of the underlying offense is something less than specific intent. In this respect, Instruction No. 20 (as set forth in footnote 4 of the majority opinion) was more favorable to Lyerla than the law required in that paragraph 1 implies that specific intent might also be required for second-degree murder.

The majority opinion cites *People v. Perez*, 108 Misc.2d 65, 66, 437 N.Y.S.2d 46, 48 (1981) and *People v. Hernandez*, 44 Colo. App. 161, 614 P.2d 900, 901 (1980), for the proposition that one cannot intentionally attempt to cause the death of another by a reckless act and for the proposition that the perpetration of an unintended killing is a logical impossibility. Further, these cases are cited to support the proposition that the words "attempt" and "negligence" are at war with one another; that they are internally inconsistent and cannot sensibly co-exist. These cases place emphasis on the word "intentional" contrary to the South Dakota statute on attempt. As previously indicated, the "intent" or "attempt" required under the South Dakota statute is simply to voluntarily act as opposed to an involuntary or forced action. In other words, an attempt to pull the trigger and shoot the gun is enough. This type of "attempt" and the "dangerous" or "stupid" act are not at war with one another; they are internally consistent and can sensibly co-exist.

Much of the confusion in this matter results from the use of the word murder, which implies an intent to take life. What we are really dealing with under South Dakota law is homicide, named second-degree murder. To intentionally pull the trigger and shoot a gun in this dangerous manner was not homicide because neither Gropper girl died, but it was attempted homicide, also known as attempted second-degree murder. Accordingly, attempted second-degree murder is a crime in South Dakota, and Lyerla's convictions for attempted second-degree murder should be affirmed.