[Crim. No. 1487. In Bank.—February 18, 1909.]

## THE PEOPLE, Respondent, v. ANTONIO CIPOLLA, Appellant.

CRIMINAL LAW—VENUE OF MURDER NEAR BOUNDARY LINE OF COUNTIES.—Under section 782 of the Penal Code, the jurisdiction of a crime committed within five hundred yards of the boundary of two or more counties is in either of the counties; and, upon the trial of a defendant in Sacramento County for a murder committed outside thereof, near its boundary, the venue is sustained by proof, that, by the measurement of witnesses, the body of the deceased was found on the Yolo side within 196 feet of the boundary, and that, in the immediate neighborhood, evidences were seen of a struggle, and blood marks on the ground were plentiful, and a sheath knife was found wet with blood, with which it appears that the murder was committed by the defendant.

ID.—EVIDENCE—DYING DECLARATIONS—RES GESTÆ—FACTS PRECEDING AND FOLLOWING ASSAULT.—The dying declarations of the deceased, shown to have been made under conviction of approaching death, were admissible and competent to cover all of the *res gestæ*, including not only the actual facts of the assault and the circumstances surrounding it, but also the matters immediately antecedent thereto and having a direct casual connection with the assault, as well as acts immediately following the assault, and so closely connected therewith as to form part of the occurrence. Under this, his statement is admissible to show that immediately after the murderous assault his body was carried and thrown into the river, and that he crawled out at about the place where he was thrown in, by means of brush at that place, of which he caught hold and climbed out, when he could go no farther and lay down.

ID.—INSTRUCTIONS—LAW AS TO MANSLAUGHTER—CONVICTION OF MURDER—DEFENDANT NOT PREJUDICED.—Although an instruction as to the law in relation to manslaughter was inapplicable to the evidence, which showed that defendant was guilty of murder, if of any

crime at all; yet he could not be prejudiced by such instruction, since if it could mislead the jury, it could only mislead them to his benefit and not to his prejudice. That they were not misled thereby is shown by their verdict of guilty of murder.

ID.—REQUEST AS TO PRESUMPTION OF INNOCENCE—SUBJECT COVERED BY CHARGE—MISPRISION IN REQUEST.—The court did not err in refusing a requested instruction as to the presumption of innocence containing the misprision that "the guilt of the defendant is presumed to be innocent until the contrary is proved," when, in view of the fact that the court fully and fairly instructed the jury as to the presumption of innocence, it was not called upon to correct the proposed erroneous instruction.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

Chas. B. Harris, B. C. Dore, and J. S. Daly, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HENSHAW, J.—Defendant, convicted of murder in the first degree, appeals from the judgment and from the order denying his motion for a new trial. While the sufficiency of the evidence to sustain the verdict and judgment is not questioned, it may be well, for the better understanding of the propositions which appellant advances, briefly to state that evidence.

The deceased, Joseph Piraino, and the defendant were Italian laborers. Piraino had rented a room in a lodging house in Sacramento, which he shared with Cipolla. Both were out of work and seeking employment, but Piraino had about one hundred and thirty dollars in gold, which he carried on his body in a money belt. Cipolla, seemingly, had no money. At least, he borrowed small sums from Piraino from time to time with which to purchase his meals. Upon the morning of the homicide he had thus obtained one dollar from Piraino, with a part of which he procured himself to be shaved. He wore a mustache. In the afternoon of that day, at Cipolla's suggestion, the two crossed the river and proceeded up the Yolo levee with the purpose of visiting a ranch conducted by Italians, in

an endeavor to secure employment. On their way they were joined by two other Italians, strangers to the deceased. The four men were seen upon the levee by two witnesses, who recognized the defendant. When they had proceeded a short distance up the river the defendant demanded of the deceased that he give up his money. The deceased refused and protested, when he was seized by either arm by the two strange Italians. Cipolla then drew a knife and slashed him savagely with it about the head, the back, and the abdomen. The wounds across the abdomen were of a frightful character, extending from the spine upon the left around and across to the spine on the right, severing the intestines and nearly cutting the body in two. The money was taken and the murderers carried him, still living, to the river near by and threw him into the water. Piraino, notwithstanding his shocking wounds, was able to drag himself to the bank, where he was observed by men upon a passing steamboat. He was picked up, taken to a hospital at Sacramento, still alive and conscious, and able to give an account of the crime as above narrated. A visit was made to his room, where Cipolla was found and arrested. He had shaved off his mustache, and in one of his shoes were found two twenty-dollar gold pieces. He was taken to the hospital and confronted with Piraino, who declared him to be his false friend and murderer.

Trial was had in the county of Sacramento, by virtue of section 782 of the Penal Code, which declares that when a crime is committed within five hundred yards of the boundary of two or more counties, the jurisdiction is in either of such counties. Appellant's first contention is that the evidence is insufficient to establish the fact that the crime was so committed within five hundred yards of the boundary of Sacramento County. The evidence of Piraino, however, is that he was thrown into the river close to the spot where the assault occurred. The body was found but 196 feet from the boundary line, and blood marks were found in the immediate neighborhood. There the ground gave evidence of having been disturbed as by a struggle, blood marks were plentiful, and a sheath knife, with its sheath, was found, the knife wet with blood. The evidence was sufficient upon this point.

Complaint is made that the court gave instructions touching the circumstances which would reduce a felonious homicide

from the grade of murder to that of manslaughter. It is said that the giving of these instructions was erroneous because they were not applicable to any issue that arose during the course of the trial, and because they tended to confuse and mislead the jurors. The court in this instance followed the common practice of trial judges, of giving a skeleton outline to the jurors of the law touching the kinds and degrees of homicide. If it be said that in this instance the law applicable to manslaughter was without the evidence and could but have served to mislead the jury, it must be answered that the defendant could not have suffered any injury thereby, as such confusion would have made only for his benefit. Under the evidence, he was either guilty of murder or he was guilty of no crime at all. The jury believed and found him to be guilty of murder. If they had been "confused" by the instructions into rendering a verdict of manslaughter, clearly such a verdict would have been to his benefit.

The court refused to give a proposed instruction touching the presumption of innocence which began with the following sentence: "The jury are instructed that the guilt of the defendant is presumed to be innocent until the contrary is proved." Manifestly, this sentence contains a clerical misprision upon the part of the proponent, but as the court instructed fully and fairly upon the matter of the presumption of innocence, it was not called upon to correct proposed instructions which were erroneous.

Objection was made to the evidence of certain witnesses who testified to the location of the body when found, and the distance which they measured from that point to the boundary line of Sacramento County. The evidence, from what has been said above, was admissible as tending to fix the *locus* of the crime, the distance from that point to the boundary line, and, consequently, the venue.

The dying declarations of Piraino were properly received in evidence. The preliminary showing to justify the introduction of such evidence, that it was made under the solemn conviction of approaching death, was ample. It is well settled that such declarations may cover all of the *res gestæ*. It is equally well settled that the *res gestæ* embrace, not only the actual facts of the assault and the circumstances surrounding it, but the matters immediately antecedent to and having a direct casual

connection with the assault as well as acts, immediately following the assault and so closely connected with it as to form in reality a part of the occurrence. Under this, it was proper to admit in evidence decedent's statement of the assault, of the carrying by the murderers of his body to the river near by and the throwing of it in. The declarations of the deceased as to what he did upon being thrown into the water come fairly within this rule, his statement being that he crawled out of the water at about the place where he was thrown in. "There is brush. I grab the brush and climb on the bank and then I can get no further. I lay down." This concludes the review of the points presented by the appellant.

None of the matters complained of contained error, and the judgment and order appealed from are, therefore, affirmed.

Sloss, J., Angellotti, J., Shaw, J., Melvin, J., and Beatty, C. J., concurred.